## Nilsen v. Nationwide Mut. Ins. Co.
### Case No. 89-CA-24
### Miami County, (2nd)
### Decided February 6, 1990
[Cite as 1 AOA 59]

*Michael A. Baer of Lefevre, Foster, Wannemacher and Baer Co., L.P.A., 206 West Main Street, Troy, Ohio 45373, Attorney for Plaintiff-Appellee*

*Francis S. McDaniel of Altick & Corwin, 900 Talbott Tower, Dayton, Ohio 45402, Attorney for Defendant-Appellant*

BROGAN, J.

This is an appeal by Nationwide Mutual Insurance Co., (Nationwide) from a declaratory judgment rendered by the trial court in favor of appellees, Maryellen Gosser Nilsen and her daughter, Aaron Gosser.

Appellees filed this action following the death of Rockey L. Gosser, who was fatally injured in an automobile accident on November 14, 1985.

The case was submitted to the trial court upon pleadings and written stipulations. On January 17, 1989, the trial court finds Findings of Fact and Conclusions of Law and rendered judgment in favor of appellees on February 13, 1989. The trial court found that appellees were entitled to $800,000 in underinsured motorist benefits pursuant to two insurance policies issued by Nationwide covering 3 vehicles owned by decedent.

The facts are as follows. Maryellen Gosser Nilsen was married to Rockey Gosser, and the couple had one child, Aaron. On the date of the accident, decedent owned three vehicles which were covered by insurance policies issued by Nationwide. One policy covered two vehicles, a Ford Escort, (in which the accident occurred), and a Volkswagon Van, and the second policy covered a Honda motorcycle. The two policies contained identical coverage listed on their respective declarations pages. At issue are the provisions for uninsured motorist coverage which read: "$100,000 each person, $300,000 each occurrence." Additionally, each of the two declarations pages refers to "Endorsement 1604."

Endorsement 1604, attached to each policy, was entitled Supplementary Uninsured Motorists Coverage (for bodily injury caused by underinsured motorists)," and contains the following provisions:

This endorsement amends your policy's Uninsured Motorists coverage.

1. An uninsured motor vehicle includes an underinsured motor vehicle. This is one for which there are bodily injury liability coverage or bonds in effects. Their total amount, however, is less than the limits of this coverage. These limits are shown in your policy's Declarations.

2. When used, arbitration of either uninsured or underinsured motorists claims is binding on the insured and the company only if the award is within the limits of state financial responsibility laws where your auto is principally garaged. If the award exceeds these limits, the company or the insured may demand a trial. This right must be used within 60 days after the award. Trial will be in a court of competent jurisdiction. Trial will be on all issues of the award including the amount within the financial responsibility limits.

3. The limits of this coverage and or any amounts payable under this coverage will

be reduced by any amount paid by or for any liable parties.

No payment will be made until the limits of all other liability insurance and bonds that apply have been exhausted by payments.

This endorsement replaces any other endorsement entitled Supplementary Uninsured Motorists Coverage.

The endorsement is issued by the Nationwide Mutual Insurance Company or Nationwide Mutual Fire Insurance Company, whichever has issued the policy to which it is attached.

Appellees received $12,500 from the tortfeasor apparently responsible for causing the death of Gosser. This amount constituted the limit of the tortfeasor's liability insurance.

Nationwide paid appellees $87,500 pursuant to the underinsured motorists coverage. In return, Maryellen Gosser Nilsen, as administratrix of Gosser's estate, executed a release discharging Nationwide from all claims resulting from the November 14 accident relating to uninsured and underinsured motorist coverage with the following reservation: "the undersigned [Maryellen Gosser Nilsen] reserves the right to pursue a Declaratory Judgment action against Nationwide dealing exclusively with the issue of whether or not the BIUI limits of policies of Rockey Gosser may be stacked. All other policy issues or claims are hereby discharged." The release was attached to the complaint filed by appellees.

Following the adverse judgment of the trial court, Nationwide timely filed this appeal citing the following assignments of error:

1. THE TRIAL COURT ERRED IN DECLARING THAT THE THREE INSURANCE POLICIES, WITH ENDORSEMENTS, OF APPELLANT DID NOT CONTAIN VALID PROVISIONS PRECLUDING THE "STACKING" OF UNDERINSURED MOTORISTS COVERAGE AND THAT, ACCORDINGLY, THE LIMITS OF SUCH COVERAGE TOTALLED $900,000.

2. THE TRIAL COURT ERRED IN DECLARING THAT THE THREE INSURANCE POLICIES, WITH ENDORSEMENTS, OF APPELLANT CONTAINED NO LIMITS OF UNDERINSURED MOTORISTS COVERAGE ON ANY PER PERSON/PER OCCURRENCE BASIS, AND THAT, ACCORDINGLY, THE LIMITS OF SUCH COVERAGE WAS $300,000 AS TO EACH OF THE THREE POLICIES OF APPELLANT.

3. THE TRIAL COURT ERRED IN THAT IT FAILED TO GIVE EFFECT TO A RELEASE WHICH THE APPELLEE EXECUTED AND DELIVERED TO NATIONWIDE IN EXCHANGE FOR THE PAYMENT BY NATIONWIDE OF $87,500.

In support of its first assignment of error, Nationwide argues that the language of Endorsement 1604, which explains underinsured motorist coverage, should be read into the language of the main policy provisions explaining uninsured motorist coverage. Nationwide contends that such a reading of the documents subjects underinsured motorist coverage to all limitations, terms and conditions modifying uninsured motorist coverage which clearly, conspicuously and unambiguously preclude the stacking of underinsured motorist coverage of the three vehicles.[1] The antistacking provision appearing in the body of the main policy is in conformity with R.C. 3937.18 which permits insurance companies to preclude the aggregation of policy coverage.

Prior to our analysis of the subject insurance policies, a review of several rules of insurance contract construction and interpretation is appropriate. As set forth *Gomolka* v. *State Auto Mutl. Ins. Co.* (1982), 70 Ohio St. 2d. 166:

[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning ***. The insurer, having prepared the policy, must also be prepared to accept any reasonable interpretation, consistent with the foregoing, in favor of the insured. ***
[W]here the provisions of an insurance policy are clear and unambiguous courts may not indulge themselves in enlarging the contract by implication in order to embrace an object distinct from that contemplated by the parties. ***
Where, however, it may reasonably be concluded that the language of the policy is ambiguous *** a universally applied axiom

of construction becomes appropriate to resolve the ambiguity.

...Policies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretations, will be construed most favorably for the insured.

(Gomokla, supra at 167-168) (citations omitted).

The well-established rules restated by the *Gomolka* Court dictate that if we find the subject policies to be unclear or ambiguous, we must interpret the policy provisions at issue in a manner most favorable to appellees.

Appellees do not dispute that the main body of the policies contain valid antistacking limitations within the uninsured motorist coverage. (Appellees' Brief, p. 8). (*See Karabin* v. *State Auto. Mut. Ins. Co.* (1984), 10 Ohio St. 3d 163 for an explanation of enforceable antistacking provision pursuant to R.C. 3937.18). The issue before this court is whether the antistacking provision contained in the uninsured motorist coverage applies to prohibit the stacking of underinsured motorist coverage set forth in the policy endorsement as well. Our review of Ohio case law concerning the stacking of insurance benefits and the effect of language employed in insurance policy endorsements has led us to conclude that in this case, it is unclear whether the underinsured motorist coverage in the endorsement should be read in conjunction with the antistacking provision of the uninsured motorist coverage contained in the body of the main policy. Therefore, we hold that appellees are permitted to stack the underinsured motorist coverage of the three vehicles.

In the case of *Dues* v. *Hodge* (1988), 36 Ohio St. 3d 46, the Ohio Supreme Court, citing *Karabin, supra,* held: "An insurance company may, pursuant to R.C. 3937.18(G), preclude the stacking of uninsured motorist coverage. The antistacking provision, however, must be both unambiguous and clear and conspicuous in the automobile insurance contract." (*Dues, supra,* syllabus 1). Although the *Dues* holding refers to the preclusion of stacking uninsured motorist coverage, it is equally applicable to underinsured motorist coverage.

In *Dues,* a 7 year old boy, Jay Dues, was struck and injured by an uninsured motorist. His parents and brother filed a declaratory judgment action against State Farm Mutual Automobile Insurance Company, (State Farm) to determine their rights under several insurance policies. State Farm had issued 3 automobile insurance policies to Mr. Dues, each containing uninsured motorist coverage with limits of $100,000 for damages due to injury of one person and $300,000 for damages due to injuries to all persons. State Farm had issued an automobile policy to Jay's brother, Randy, containing uninsured motorist coverage with limits of $25,000 for damages due to injury of one person and $50,000 for damages due to injuries to all persons.

The Dues family claimed that they could stack all uninsured motorist coverage to recover, on behalf of Jay Dues, $100,000 upon each of the three policies issued to Mr. Dues. Further, Mr. and Mrs. Dues claimed $100,000 upon each of Mr. Dues policies for derivative actions for emotional distress and loss of services. Finally, the Dues sought $50,000 under Randy Due's policy. (*Dues, supra* at 47).

The parties in *Dues* stipulated that at the time of the accident, Endorsement 6275 RR was in effect for all 4 policies.

The following antistacking language was found within the endorsement itself:

"If There is Other Similar Coverage
"1. If the insured is injured as a pedestrian and other similar coverage applies, or is injured while occupying your car, and your car is described in the declarations page of another policy providing similar coverage:
"a. the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability; ****. (*Dues, supra* at 48).

It was this language that the Court found to be clear and conspicuous in holding that the policies in question contained valid antistacking provisions.

The antistacking provisions in Dues and those in the instant case are readily distinguishable. In *Dues,* the antistaking provision appeared in the endorsement itself while the antistaking provision in the Nationwide policy appears only in the main body of the policy.

Nationwide argues that in its endorsement, the definition of an uninsured motor vehicle was amended to include an underinsured motor vehicle and that therefore, all policy terms, conditions and limitations which apply to uninsured motorist coverage apply with equal force to underinsured motorist coverage. Nationwide states in its brief that

"[i]n the endorsement [it] simply avoided the unnecessary repetition of all the terms, conditions and limitations of uninsured motorist coverage * * *." (Appellant's Brief, p. 7).

Nationwide's argument loses its persuasiveness upon consideration of the ease with which it might have made the uninsured coverage antistacking provision clearly applicable to the underinsured coverage. Nationwide need only have included in its endorsement a provision similar to one appearing in a contested policy endorsement in the case of *Suvak* v. *Buckeye Union Ins. Co.* (May 15, 1980), Cuyahoga App. No. 41037, unreported: the limits of liability of underinsured motorist coverage are set forth in the policy declarations for uninsured motorist coverage and, "*subject to all the terms of the policy having reference thereto,* shall be the total limit of the company's liability for all damages because of bodily injury * * *." (*Suvak, supra* at 3) (emphasis added).

Similarly, in *Central Mut. Ins. Co.* v. *Niemi* (May 6 1983), Mahoning App. No. 82-CA-91, unreported, an insurance policy supplement contained language which incorporated the uninsured motorist antistacking provision into the underinsured motorist coverage. This incorporation was accomplished without a word-for-word reiteration of all terms conditions, and restrictions set forth in the main body of the policy.

The issue in *Central Mut. Ins. Co.* was not the applicability of antistacking language from uninsured coverage to underinsured coverage, but concerned the applicability of the limits of liability and set-off provisions set forth in the uninsured coverage to the underinsured coverage. However, we find that the supplement language which was held to validly incorporate all uninsured policy provisions into the underinsured policy provisions is equally relevant to the case at bar. The Central Mutual Supplement which provided underinsured motorist coverage indicated that the "underinsured coverage was afforded 'with respect to such insurance as is afforded by the policy for damages because of bodily injury caused by accident arising out of the ownership, maintenance or use of an uninsured highway vehicle or an uninsured automobile * * *.'" (*Central Mut. Ins. Co., supra* at 4,6,7). The court held that the supplement and policy were not ambiguous and permitted the application of the set-off provision and liability limits contained in the uninsured coverage to the

underinsured coverage provided by the supplement.

Alternatively, Nationwide could have reprinted all terms and conditions applicable to underinsured motorist coverage in the endorsement. As we have found the antistacking provision set forth in the uninsured motorist coverage valid pursuant to R.C. 3937.18, the repetition of this provision in the underinsured context would have likely precluded the litigation of the stacking issue.

A case in which this court did find clear and unambiguous antistacking language in an endorsement is *Wood* v. *The Professionals Ins. Co.* (December 22, 1986), Montgomery App. No. 9891, *reversed on other grounds sub nom. Wood* v. *Shepard* (1988), 38 Ohio St. 3d 86.

In *Wood,* plaintiff attempted to stack the underinsured motorist coverage on his two vehicles to recover for the death of his wife, who died due to injuries sustained in an automobile collision. Underinsured motorist coverage was included per policy endorsement, which explained that the definition of an uninsured motor vehicle was thereby expanded to include an underinsured motor vehicle. This provision is similar to the Nationwide policy provision under present consideration. However, unlike the instant endorsement, The Professionals' endorsement contained enforceable antistacking language as follows:

LIMIT OF LIABILITY
The Limit of Liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
1. Covered persons;
2. Claims made;
3. *Vehicles or premiums shown in the Declarations;* or
4. Vehicles involved in the accident. (Emphasis added.)

(*Wood, supra* at 16, 17).

We found that although it was not labelled as such, this provision was a valid antistacking device, as it "clearly evinces an intent to preclude any increase in liability based upon the number of vehicles insured. *** Furthermore, it is expressed in straightforward language and suffers from none of the vague language and confusing punctuation which have

caused courts to invalidate insurance contract provisions in other cases." (*Id.* at 17). (Citing *Grange Mut. Cas. Co.* v. *Fodor* (1984), 21 Ohio App. 3d 258; *Tenison* v. *Nationwide Mut. Ins. Co.* (January 29, 1986), Summit App. No. 12037, unreported).

The case of *Cincinnati Ins. Co.* v. *Ptak* (1984), 16 Ohio Bar Report 445 contains facts and arguments analogous to those at bar. While the issue in *Ptak* concerned the applicability of set-off provisions, rather than antistacking provisions, to underinsured coverage provided by policy endorsement, we find the reasoning and holding of the *Ptak* court to be germane.

In *Ptak*, the insurance company provided Ptak with uninsured motorist coverage in the amount of $100,000. Later, underinsured coverage was added via supplement to the main contract. Ptak was injured in an automobile accident and subsequently received a total of $70,000 from the two alleged tortfeasors. The insurance company filed a declaratory judgment action to determine its liability under the policy issued to Ptak.

The insurance company argued that the "underinsurance supplement is to be read back into the provisions of the main policy dealing with uninsured motorist coverage" and that the set-off provision contained in the main policy applied to the underinsured coverage, limiting Ptak's recovery to a maximum of $30,000. (*Ptak*, *supra* at 446).

Conversely, Ptak contended that the language of the supplement was unclear and ambiguous regarding the right of set-off, and that "construing the policy liberally in favor of the insured, no set-off was permitted." (*Id.*).

The Clermont County Court of Appeals agreed with the conclusion of the trail court that "there is no language in the underinsurance supplement stating that the [set-off] provisions apply to the underinsurance provisions or indicating in any way that amounts received from the amount paid by Cincinnati Insurance to its insured." (*Id.* at 447). The Court of Appeals found that "[i]ndeed, the underinsurance supplement provides that the 'limits of liability' for underinsured motorist coverage '*** are stated in the schedule of this policy ***.' The schedule indicates only that the limit of Cincinnati Insurance's liability for underinsured motorist coverage is $100,000. " (*Id.*)

Due to the ambiguity as to the insurance company's right of set-off, the *Ptak* court,

applying the rule that "*** language in an insurance policy is to be construed most strictly against the drafter, the insurance company, and liberally in favor of the insured", held that no set-off would be allowed. (*Id.*) (citation omitted).

The language of Nationwide's Endorsement 1604 is similar to that used by Cincinnati Insurance in its supplement. The only reference to the main policy contained in Endorsement 1604 is set forth in Paragraph 1, wherein it is disclosed that the limits of uninsured motorist coverage set forth in the declarations page of the main policy are applicable to the underinsured coverage provided by the endorsement.

Our review of Ohio case law reveals several valid methods whereby an insurance company can successfully include clear and unambiguous antistacking language with respect to underinsured motorist coverage contained in a policy endorsement or supplement. None of these methods were employed by Nationwide. Rather, this case is most similar to one wherein the court refused to permit limitations set forth in the main policy to be applied to underinsured coverage granted in an endorsement. Therefore, we find that appellees will be permitted to stack the coverage of each of the three vehicles insured by appellant. Appellant's first assignment of error is overruled.

In appellant's third assignment, it contends the trial court failed to give effect to a release which the appellees executed and delivered to Nationwide in exchange for the payment of $87,500 to appellees by Nationwide. Appellees argue that the appellant failed to raise the affirmative defense of release in its answer pursuant to Civ. R. 8(C) and therefore is vulnerable to all claims asserted by appellees. See, *Hoover* v. *Sumlin* (1984), 12 Ohio St. 3d 1,3.

In their complaint for declaratory judgment, appellees clearly acknowledged that they released the appellant from its contractual obligations to the appellees by the payment by appellant of the One Hundred Thousand Dollars to appellees, but with the reservation of the right to pursue the instant Declaratory Judgment. Attached to the complaint was a copy of the release. The release clearly reserved to the appellees "the right to pursue a Declaratory Judgment action against Nationwide dealing *exclusively* with the issue of whether or not the BIUI limits of the policies of Rockey Gosser may be stacked. All other policy issues or claims are hereby discharged." The release by its terms was confined to claims

growing out of the coverage of Policy No. 9134 B 148006. This policy provided the insured coverage for the Ford Escort and the Volkswagen van.

On August 3, 1988, after the release had been signed and the instant declaratory judgment action had been filed, the Ohio Supreme Court decided the case of *Wood* v. *Shephard* (1988), 38 Ohio St. 3d 86. In that case, the Court held that each person entitled to recover damages pursuant to R.C. 2125.02 for wrongful death, and who is an insured under an underinsured motorist provision in an insurance policy, has a separate claim and such separate claims may not be made subject to the single person limit of liability in the underinsured motorist provision.

The only issue which the appellee reserved for litigation in the declaratory judgment action was the issue of "stacking" the coverages of the three vehicles covered by the two insurance policies. By her own admission in the complaint, "all other policy issues" were discharged. A defendant is charged with raising in his answer all affirmative defenses which are fairly raised by the plaintiff's complaint. Since the appellants admitted in the complaint that they had discharged the defendant from all other claims under the insurance policy except that of "stacking", Civ. R. 8(C) has no application in this lawsuit *except* as it applies to Policy No 91E744439. The appellant's third assignment is well taken.

We last consider Nationwide's second assignment of error with respect to the limits of coverage of the subject insurance policies.

Regardless of arguments favoring either the clarity or ambiguity of the limitations of underinsured motorist coverage, we find that such limitations are identical to those disclosed on the declarations page for uninsured motorist coverage. This finding is statutorily mandated by R.C. 3937.18(B), which states: "Coverages offered under division (A) of this section [uninsured and underinsured coverage], shall be written for the same limits of liability." Therefore, the limits of underinsured coverage are "$100,000 each person, $300,000 each occurrence" as written for uninsured coverage.

In *Wood, supra,* James Wood, individually and as guardian of his two minor children and administrator of his wife's estate, filed a complaint seeking declaratory judgment construing his insurance policy issued by The Professionals Insurance Company. Wood's wife died of injuries sustained in an auto collision with and underinsured motorist. Wood's underinsured motorist coverage had limits of $100,000 per person and $300,000 per accident on each of two vehicles.

The Court reviewed Ohio law mandating uninsured and underinsured motorist coverage for damages due to "bodily injury, sickness or disease, *including death.*" (R.C. 3937.18) (Emphasis added). Further, the Court found that pursuant to Ohio's wrongful death statute, R.C. 2125, "the surviving spouse and the children of the decedent have the right to recover damages suffered by reason of the wrongful death, even though the action must be brought in the name of the personal representative of the decedent." (*Wood, supra* at 89). The Court observed that "R.C. 2125.02 states that the surviving spouse, the children, and the parents of the decedent are 'all * * * rebuttably presumed to have suffered damages by reason of the wrongful death * * * .'" (*Id.* at 90). In light of these statutory provisions, the Court concluded that "absent authorization allowing these separate claims to be treated as a single combined claim for purposes of underinsured motorist coverage, the persons entitled to recover under R.C. 2125.02 have separate and distinct claims." (*Id.*)

The *Wood* Court found the following argument asserted by appellants to be convincing: "[Each of the survivors has a separate claim for wrongful death and * * * each has a maximum coverage of $100,000 up to a total limitation of $300,000." (*Id.*) The Court refused to impose the "per-person limitation of $100,000 regardless of the number of statutory beneficiaries who are also covered under the policy." (*Id.*) The Court found that to do so would "frustrate the purposes of R.C. 3937.18", and reasoned:

> Nowhere in R.C. 3937.18 is authority granted to limit claims for wrongful death to a single person limit of liability. This is an important indicator of legislative intent because the statute expressly allows insurance companies to include policy provisions that grant the insurer the right of setoff and prohibit stacking of insurance coverages. When viewed in light of R.C. 2125.02, which grants the person described therein the right of suing for damages resulting from wrongful death, appellee's attempt to limit coverage to a single person limit of liability without any statutory authority to do so must be seen as clearly

frustrating the purposes of R.C. 3937.18.

We disagree with the appellees' interpretation of the *Wood* decision appearing in their brief: "[I]n a wrongful death situation the derivative claims * * * of insureds under the applicable policy are not subject to the single person limit of liability, but that the "per occurrence" amount of underinsured motorist benefits are available to compensate such derivative claims." (Appellee's Brief, p. 23). Rather, we adopt the interpretation of the *Woods* decision offered by appellant. "It simply held that each of the three beneficiaries therein was entitled to the single person limit of $100,000, and this happened to correspond with the $300,000 per occurrence limitation in that case." (Appellant's Reply Brief, p. 5). Therefore, we find the interpretation of the *Woods* case by the trial court, and the award of damages consonant therewith, to be incorrect.

The Court reviewed Ohio law mandating uninsured and underinsured motorist coverage for damages due to "bodily injury, sickness or disease, *including death*." (R.C. 3937.18) (Emphasis added).

Further, the Court found that pursuant to Ohio's wrongful death statute, R.C. 2125, "the surviving spouse and the children of the decedent have the right to recover damages suffered by reason of the wrongful death, even though the action must be brought in the name of the personal representative of the decedent." (*Wood, supra* at 89). The Court observed that "R.C. 2125.02 states that the surviving spouse, the children, and the parents of the decedent are 'all * * * rebuttably presumed to have suffered damages by reason of the wrongful death * * * .'" (*Id.* at 90). In light of these statutory provisions, the Court concluded that "absent authorization allowing these separate claims to be treated as a single combined claim for purposes of underinsured motorist coverage, the persons entitled to recover under R.C. 2125.02 have separate and distinct claims." (*Id.*)

The *Wood* Court found the following argument asserted by appellants to be convincing: "[Each of the survivors has a separate claim for wrongful death and * * * each has a maximum coverage of $100,000 up to a total limitation of $300,000." (*Id.*) The Court refused to impose the "per-person limitation of $100,000 regardless of the number of statutory beneficiaries who are also covered under the policy." (*Id.*) The Court found that

to do so would "frustrate the purposes of R.C. 3937.18", and reasoned:

Nowhere in R.C. 3937.18 is authority granted to limit claims for wrongful death to a single person limit of liability. This is an important indicator of legislative intent because the statute expressly allows insurance companies to include policy provisions that grant the insurer the right of setoff and prohibit stacking of insurance coverages. When viewed in light of R.C. 2125.02, which grants the person described therein the right of suing for damages resulting from wrongful death, appellee's attempt to limit coverage to a single person limit of liability without any statutory authority to do so must be seen as clearly frustrating the purposes of R.C. 3937.18.

(*Id.* at 90, 91) (Footnote omitted).

We disagree with the appellees' interpretation of the *Wood* decision appearing in their brief: "[I]n a wrongful death situation the derivative claims * * * of insureds under the applicable policy are not subject to the single person limit of liability, but that the "per occurrence" amount of underinsured motorist benefits are available to compensate such derivative claims." (Appellee's Brief, p. 23). Rather, we adopt the interpretation of the *Woods* decision offered by appellant. "It simply held that each of the three beneficiaries therein was entitled to the single person limit of $100,000, and this happened to correspond with the $300,000 per occurrence limitation in that case." (Appellant's Reply Brief, p. 5). Therefore, we find the interpretation of the *Woods* case by the trial court, and the award of damages consonant therewith, to be incorrect.

In summary, the *Woods* decision requires us to award to Maryellen Nilsen and her daughter the single person limit of $100,000 *each* upon the policy insuring the Honda motorcycle, to wit, Policy No. 91E744439. The appellees are entitled to "stack" the $100,000 per person coverage of the policy insuring the Ford Escort and the Volkswagon, for a total amount of $200,000. The Nilsens are not entitled to $100,000 each as per the *Woods* decision as they are bound by the terms of the release. Total insurance coverage is offset by the $100,000 previously received by appellees, entitling them to benefits of $300,000.

Appellant's second assignment of error is

sustained.

The judgment of the trial court will be reversed and the judgment will be entered which declares that the appellant shall provide underinsured coverage benefits in the amount of $300,000 to the appellees.

In summary, the *Woods* decision requires us to award to Maryellen Nilsen and her daughter the single person limit of $100,000 *each* upon the policy insuring the Honda motorcycle, to wit, Policy No. 91E744439. The appellees are entitled to "stack" the $100,000 per person coverage of the policy insuring the Ford Escort and the Volkswagon, for a total amount of $200,000. The Nilsens are not entitled to $100,000 each as per the *Woods* decision as they are bound by the terms of the release. Total insurance coverage is offset by the $100,000 previously received by appellees, entitling them to benefits of $300,000.

Appellant's second assignment of error is sustained.

The judgment of the trial court will be reversed and the judgment with be entered which declares that the appellant shall provide underinsurance coverage benefits in the amount of $300,000 to the appellees.

WOLFF, P.J., and KERNS, J., concur.

Judge Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).

---

[1] Appellee persuasively argues that if the appellant had intended by the Endorsement to apply all the terms, conditions and limitations of the uninsured motorist coverage to the underinsured coverage, there would be no reason for it to have included in the Endorsement the "set-off" language in paragraph 3 since set-off is already provided in the uninsured motorist coverage of the policy in virtually the same language as the Endorsement.